ENOCH PATTERSON & others *vs.* WILLIAM CURRIER.

A debtor sent to his creditor a sum in gold to be sold as a commodity and the proceeds applied in part payment of the debt, but limited the sale to a rate per dollar which exceeded the market value of gold then or ever since. After holding the gold two years without further instructions, the creditor appropriated it to his own use and credited the debtor with its market value at the time of its appropriation. *Held*, that he was not bound to credit the debtor with its market value when he received it.

CONTRACT on an account annexed for goods sold and delivered to the defendant, containing an item of credit to him for a cash payment of $696.25 thereon in July 1867. The defendant filed a declaration in set-off on an account, one of the items of which was as follows: " 1865. March 2. For $500 in gold paid the plaintiffs to be by them sold at current rate in currency, which then was $1.98 on a dollar, and to be credited on account, as per

agreement, in currency, $990." The case was referred to an auditor, the portion of whose report relating to these items was as follows :

" I find on the evidence that this was the state of facts: The plaintiffs' firm was dissolved on December 31, 1864, and went into liquidation. On March 2, 1865, a balance being then due and unpaid to the plaintiffs, Albert Currier, acting in behalf of and as agent for the defendant, sent to the plaintiffs $500 in gold, received from the defendant for the purpose of being paid to the plaintiffs, with instructions to them by letter to sell said gold at the market price, but not less than $2.00, and credit the defendant with the proceeds thereof. Upon the day the plaintiffs received the gold, the market price was $1.96 ; and the day after, $1.98 ; and up to the time of this hearing the price of gold has fluctuated, but has never reached $2.00. The plaintiffs not being able to sell the gold for $2.00, it was placed in their safe, and has been retained unsold ever since. No further instructions as to selling it were ever given to the plaintiffs or any of them, and no notice, up to the time of bringing this action, was ever given to the defendant, or any one in his behalf, that the gold had not been sold.

" I further find that, upon a day in July 1867, when the market price of gold was $1.39¼, the plaintiff Patterson, duly authorized to act for the plaintiffs' firm in liquidating and closing up their affairs, appropriated the gold, by taking it himself at the price of $1.39¼, to the payment of so much of the defendant's debt to said firm, to wit, the sum of $696.25 ; and that said gold is now in his possession as aforesaid. The plaintiffs claim that $696.25 is the amount, and July 1867 the time, of the credit to the defendant ; while the defendant claims that the amount of the credit should be what the gold would have brought if sold at $1.98, to wit, the sum of $990, and that the time of the credit should be March 2, 1865, the day the gold was remitted to the plaintiffs."

At the trial in the superior court, before *Lord*, J., without a jury, no evidence but the auditor's report was introduced by either party ; the only question at issue was as to the sum to be

credited to the defendant for his gold; the judge ruled that the plaintiffs were bound to give credit therefor at the rate of $1.96 for each gold dollar, and ordered judgment allowing such a credit as of the date when the gold was received by the plaintiffs; and the plaintiffs alleged exceptions.

*J. D. Ball,* for the plaintiffs.

*C. C. Dame,* for the defendant.

GRAY, J. The parties admit that the five hundred dollars in gold was sent by the defendant to the plaintiffs, not as a payment in money of a debt, but to be sold and accounted for as a commodity; and the question between them is, At what rate is it to be accounted for?

The instructions from the defendant to the plaintiffs, at the time of sending them the gold, were to sell it at the market price, but at the rate of not less than $2.00. The price of gold in the market was not then, and has never since been, as high as that. To have sold it for less would have been a breach of those instructions. It does not appear that the defendant ever gave them any other instructions, or had not equal means of knowledge with the plaintiffs of the market price of gold, or that such price since July 1867 has exceeded the rate at which the plaintiffs at that date, upon liquidating and closing up the affairs of their partnership, credited it on their books to the defendant. Under these circumstances, we are of opinion that there is no evidence of any negligence, or breach of duty, or appropriation of the gold to their own use, on the part of the plaintiffs before that date, and no ground for charging them with the gold at the market price at the time when it was originally received by them.

*Exceptions sustained.*